IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ERNEST MICHAEL ALVERSON and SADIE B. ALVERSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 14-00387-CB-B |
| v. | ) ) | |
| PNC BANK, a National Banking Association, | ) ) ) ) | |
| Defendant, | ) | |

## ORDER

This matter is before the Court on Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5.) The motion has been fully briefed by the parties. (Docs. 6, 8 & 10.) Upon due consideration of the issues raised and the relevant law, the Court finds that the motion is due to be granted.

**Factual & Procedural Background**

This action arises from attempts by the Plaintiffs, Ernest Michael Alverson and Sadie B. Alverson (the Alversons), to obtain a loan modification from their mortgagee, Defendant PNC Bank. On March 12, 2007, the Alversons "entered into a mortgage with PNC encumbering property [their home] owned by them in Baldwin County, Alabama." (Compl, ¶ 2, Doc. 1-1.) The Alversons subsequently "incurred substantial physical and economic setbacks" and, beginning in November 2012, "requested individually and through counsel that the loan be modified based on their economic and physical conditions." (*Id.* ¶ 3.) Between November 2012 and January 2014, Plaintiffs submitted five loan modification packages to PNC. "As to

the majority of the submissions. . ., Plaintiffs received no communication back whatsoever from PNC although on occasion Plaintiffs, after retaining counsel received communications from PNC that their loan modification package needed to be supplemented." (*Id.* ¶ 4.) Counsel, after correspondence with PNC, would supplement the packages as requested. However, "the loan modification packages submitted. . . by the Plaintiffs . . . were not processed," and no reason was given for PNC's failure to do so. (*Id.*) During this time, PNC communicated with the Alversons directly "twenty to thirty" times, with notifications that their loan was in default and threatening foreclosure, even though PNC had been given notice that the Alversons were represented by counsel. (*Id.* ¶ 5.)

In December 2013, Plaintiffs received "notification that their loan could not be modified as they had not submitted loan modification documentation to support the application." (*Id.* ¶ 7.) PNC did not immediately explain how the loan modification request was deficient. (*Id.*) Plaintiffs allege that they "have exhibited to PNC through Social Security disability records, income records, hardship affidavits, and other expenditures and debts, that they would be able to service the mortgage indebtedness if the same were modified." (*Id.* ¶ 8.)

In mid-January 2014, counsel for PNC contacted Plaintiffs' counsel "requesting that the same package be faxed as it had previously been emailed, notwithstanding the fact that it was received by e-mail, it had to be faxed, [and]. . . it was faxed on or about January 20, 2014." (*Id.*) After the Alversons threatened legal action in late January 2014, PNC's counsel requested that the Alversons "refrain from filing suit so that the matter could be resolved." (*Id.* ¶ 10.) Communications

2

between counsel for the parties continued from February through June 2014. On June 3, 2014, Defendant's counsel represented to Plaintiffs' counsel "that there was currently no foreclosure sale pending given the status of the negotiations." (*Id.* ¶ 11.) However, in a letter dated June 9, 2014, PNC notified Plaintiffs' counsel "that in fact the foreclosure was scheduled for July 14, 2014." (*Id.* ¶ 13.) Further communications between counsel ensued. The July foreclosure sale was cancelled but was reset for August 11, 2014. Plaintiffs filed this lawsuit on August 8, 2011.

Plaintiffs filed the underlying Complaint in the Circuit Court of Baldwin County on August 8, 2014 asserting claims against PNC Bank for negligence, wantonness, and violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692a-1692p, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681a-1681x.. The Complaint alleged damages in the amount of $1 million and also requested a temporary restraining order (TR0) enjoining the scheduled foreclosure sale of their property. On August 11, 2014, the date of the scheduled sale, a TRO was entered by Baldwin County Circuit Judge Lang Floyd. On August 15, 2014, PNC filed a notice of removal in this Court based on both diversity and federal question jurisdiction. Shortly after removal, PNC filed a motion to dismiss for failure to state a claim upon which relief can be granted.

**Issues Raised**

Defendant contends the facts alleged in the Complaint do not support a claim for relief under state or federal law. In response, Plaintiffs argue that their state law claims for negligence and wantonness should survive the motion to dismiss. Plaintiffs, however, appear to have abandoned their federal law claims. They do not

3

address these claims (both contained in Count III of the Complaint) at all in their response. Moreover, they conclude their brief by "request[ing] that the Motion to Dismiss as filed by Defendant, PNC Bank, N.A., be denied as to Counts I and II." Consequently, the Court considers the motion to be unopposed as to Count III and below addresses the sufficiency of Plaintiffs' negligence and wantonness claims under Alabama law.

**Standard of Review**

A complaint must "set forth a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth the parameters of a well-pleaded complaint. A claim for relief "must set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]." *Id.* at 556; see also *Watts v. Florida Int'l University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (applying *Twombly*). Furthermore, a complaint must "provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. Bellsouth Telecommc'ns, Inc.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court further refined the threshold requirements for a claim under Rule 8(a)(2).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief

> will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Iqbal*, 129 S.Ct. at 1949-50 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true." *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1232 (11th Cir. 2000)(per curiam). Conclusory allegations, however, are not. "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall,* 610 F. 3d at 709-10. Next, the court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 710. Plausibility means something more than allegations that are "merely consistent with" liability. Iqbal, 129 S.Ct. at 1949. The facts alleged must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Legal Analysis**

The broad issue presented is whether the facts asserted in the Complaint state a claim for negligence or wantonness. Unfortunately, the parties' briefs are not particularly helpful in addressing that question because they misidentify the factual basis of the claims. The Complaint alleges negligence and wantonness based on "the conduct of PNC in *failing and refusing to process the Plaintiffs' loan modification packages*." (Compl. ¶¶ 17 & 20, emphasis added.) However, the issue the Defendant

5

and Plaintiffs argue is whether Alabama recognizes a cause of action for negligent or wanton *servicing of a mortgage account*.[1] As Defendant correctly points out, Alabama law does not recognize a tort-like cause of action for breach of a duty created by contract, at least not between the parties to a contract; therefore, a mortgagor cannot maintain a cause of action against the a mortgagee for negligent or wanton servicing of a mortgage contract. *See Blake v. Bank of North America,* 845 F.Supp. 2d 1206, 1210 (M.D. Ala. 2012). While servicing a mortgage account involves duties created by contract, the same cannot be said for processing a request for a loan modification. [2]

Therefore, the Court must look more closely at Plaintiffs' negligence and wantonness claims. To recover under a negligence theory, Plaintiffs must allege and prove Defendant had a duty to process their request for a loan modification. *See AALAR, Ltd. v. Francis,* 716 So. 2d 1141, 1144 (Ala. 1998) (elements of negligence claim are duty, breach of that duty, causation and damages). To recover under a wantonness theory, Plaintiffs must allege and prove they had a right to have a loan modification request processed. *See* Ala. Code § 6-11-20(b)(3) (defining

---

[1] In the cases cited by the Defendant, the negligence and wantonness claims involved the defendant's servicing of the existing loan, not the handling of a modification request. *Wallace v. SunTrust Mortgage, Inc.*, 974 F. Supp. 2d 1358, 1369 (S.D. Ala. 2013) (complaint alleged defendant negligently and wantonly "handled, serviced and processed payment, fees and all aspects of [her] Mortgage loan") *Quinn v. Deustche Bank Nat'l Trust Co.*, 2014 WL 977632 (S.D. Ala. Mar. 12, 2014) ("crux of [plaintiff's] negligence and wantonness claims is. . . that defendants should have accepted, applied and credited his mortgage payments in a timely and accurate manner, and that their alleged failure to do so breached a duty of care owed to him and caused him to incur damages").

[2] At the very least, there are no facts alleged from which the Court could infer that the duty to process the loan modification arose from the parties' contract.

wantonness as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). As far as this Court has been able to determine, Alabama courts have not specifically addressed claims of negligent or wanton failure to process a loan modification request.

The Alabama supreme court has, however, addressed a similar type of claim. In *Armstrong Bus. Serv., Inc. v. AmSouth Bank*, 817 So. 2d 665 (Ala. 2001), the plaintiff, ABS, argued that AmSouth owed a duty "to properly process ABS's loan request." *Id.* at 680. The duty, according to ABS, arose from AmSouth's internal loan application policies. The court rejected this argument, holding that the policies were created for the bank's own benefit and did not create a common-law duty or right. *Id.* at 681. On the other hand, Alabama has recognized a duty of care in the loan processing context under the "doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care." *Southland Bank v. A&A Drywall Supply Co., Inc.* 21 So. 3d 1196, 1219 (Ala. 2008). But those cases involved special circumstances outside the typical borrower/lender relationship. In *Southland Bank*, the bank assisted the plaintiff in completing and submitting a loan application to the Small Business Administration, and the court held that the bank "arguably undertook a duty to process the SBA application; this was done, and done correctly." *Id.* In *Williamson v. Realty Champion*, 551 So. 2d 1000 (Ala. 1989), the court reversed summary judgment in favor of the defendants on a negligence claim holding that a duty of care arose when the mortgage company undertook to help the plaintiffs procure an F.H.A. loan. *Id.* at 1003.

The instant case is more like *Armstrong* and is distinguishable from the "undertaken duty" cases. In both the latter cases, the defendant voluntarily acted on behalf of (or at least assisted) the plaintiff in submitting a loan application to a third party. Here there is no third-party lender involved and no allegation that Defendant volunteered to act on Plaintiffs' behalf or to assist Plaintiffs. Quite the opposite. Plaintiffs allege they submitted multiple requests for a loan modification to the Defendant, their lender, who did *not* act at all, much less undertake to act on Plaintiffs' behalf. The facts in the Complaint describe inept handling of Plaintiffs' loan modification request, but they do not support a claim for negligence or wantonness under Alabama law.

**Conclusion**

For the foregoing reasons, the motion to dismiss is **GRANTED**. Judgment will be entered by separate order dismissing Plaintiff's claims without prejudice.

**DONE** and **ORDERED** this the 15th day of December, 2014.


                                               **s/***Charles R. Butler, Jr.*
                                               **Senior United States District Judge**